## SHARP v. PAWHUSKA ICE CO. et al.

No. 13453—Opinion Filed July 3, 1923.

(Syllabus.)

**1. Trial—Demurrer to Evidence.**

A demurrer to the sufficiency of evidence is properly sustained where the record contains no evidence tending to show liability on the part of demurrant.

**2. Trial—Objection to Evidence—Statement of Grounds.**

Where objection is made to the admission of evidence, the grounds of objection should be specifically stated so that opposing counsel may have opportunity to meet such objection and the court be informed as to the question to be passed upon.

**3. Appeal and Error—Review—Objections to Evidence.**

On appeal, on assignment of error in overruling objections to evidence, this court will pass upon the objections made to the trial court, and not upon objections not presented to such court.

**4. Evidence—Book Accounts—Competency.**

Book accounts are not rendered incompetent as evidence because they are kept under any special system of bookkeeping, but if the entries therein are otherwise competent, they will not be rejected because of the particular system of keeping them.

**5. Same—Requisites.**

To render book accounts admissible in evidence, they must be shown to have been correctly kept, to have been kept in the ordinary course of business as an essential part of the system of business, to have been made at or reasonably near the time of the transaction, to be books of original entries, and shown to be relevant and material to the issue.

**6. Same.**

Where book accounts are shown to be otherwise competent and the entries therein to be material, relevant, and evidentiary as to the issue, they are then equally competent for the purpose of proving either the negative or the affirmative of such issue.

**7. Witnesses—Impeachment — Prejudice of Witness.**

It was not error to reject the testimony of Sharp offered for the purpose of showing the prejudice of the witness Hudson, by showing that the witness Hudson had not purchased a suit of clothes for Sharp, the record showing that the witness Hudson had emphatically stated that he did not purchase the suit of clothes for Sharp.

### 8. Trial—Excusing Witness from Rule.

It is not error to excuse the witness DeBarr from the rule, he being subpoenaed as a qualified expert witness, in the absence of any showing that the substantial rights of plaintiff had been prejudiced by reason of the witness DeBarr being excused from the rule and permitted to remain in the court room.

### 9. Evidence — Exclusion of Evidence—Matters of Expert Knowledge.

It is not reversible error to reject the testimony of witnesses offered for the purpose of proving the effect of ammonia upon the eyesight, such witnesses not having qualified as experts.

### 10. Appeal and Error — Questions of Fact —Verdict.

Where issues of fact are submitted to a jury under instructions fairly covering the law applicable to such facts, a verdict upon conflicting testimony will not be disturbed, there being sufficient testimony to reasonably sustain the verdict.

Error from District Court. Muskogee County; E. A. Summers, Judge.

Action by R. E. Sharp against the Pawhuska Ice Company and Van Noy Interstate Company for damages for personal injuries. Judgment for defendants, and plaintiff brings error. Affirmed.

Harry G. Davis and Neff & Neff, for plaintiff in error.

Leahy, MacDonald, Burnett & Files, and Rutherford & Cosgrove, for defendant in error Pawhuska Ice Company.

Harris, Spielman, Thomas & Harris, P. G. Darrough, and J. B. Furry, for defendant in error Van Noy Interstate Company.

HARRISON, J. This action was begun in the court below by R. E. Sharp against the Pawhuska Ice Company and Van Noy Interstate Company for $50,000 damages for injuries alleged to have been sustained by plaintiff, and to have been caused by the negligence of defendant companies.

The allegations, in substance, were that plaintiff was a news agent and fruit vendor in the employ of Van Noy Interstate Company on passenger trains running from Muskogee to Pawhuska; that on September 11, 1920, while in the discharge of his duty under his employment, he went to the Pawhuska Ice Company's plant to purchase ice needed for his fruit, cold drinks, etc.; that as had been his previous custom to do, he went into a combination "engine and tank room" to get his ice; that not knowing that the room was filled with ammonia and poisonous gases, and without knowledge of the danger therein, he entered said room and immediately upon doing so became blinded and suffocated by the ammonia and poisonous gases, which defendant ice company had negligently permitted to escape through defective appliances; that by reason of the total blindness and permanent injuries to his lungs thereby caused, he had paid out $600 for necessary medical services and other expenses in having his injuries treated, and that by reason of such expense and the serious and permanent character of his injuries, he had been damaged $50,000; and prayed judgment for such amount.

The allegations in the petition were put in issue by the separate answers of the two defendant companies. At the close of plaintiff's evidence each defendant company filed a separate demurrer to the sufficiency of the evidence. The court sustained the demurrer of Van Noy Interstate Company, but overruled the demurrer of Pawhuska Ice Company; thereupon Pawhuska Ice Company introduced its evidence, and the cause was argued and submitted to the jury, which returned a verdict in favor of defendant Pawhuska Ice Company.

The cause is brought here upon petition in error and an incomplete case-made; the case-made is incomplete in that it does not contain all the evidence taken at the trial, while issues are presented here in reference to the reception, rejection, and effect of certain evidence.

The first complaint made by plaintiff in error is:

"The trial court erred in sustaining the demurrer to the evidence made by the Van Noy Interstate Company."

He then quotes from a rather unusual statement which the trial judge was induced to make, not in the course of the trial, but in the course of the preparation of the case-made, as follows:

"The evidence given on behalf of the plaintiff, if believed by the jury, was sufficient to establish all the allegations of plaintiff's amended petition."

—and following the above quotation, plaintiff in error says:

"This being true, it was of course error to sustain a demurrer to the plaintiff's evidence as against one defendant."

It is thus manifest that the object of plaintiff in error is to convey to this court that the trial judge had reference to the evidence against the Van Noy Interstate Company in what he said of the sufficiency of the evidence, if the jury had believed it. But from the context of the entire statement it is apparent that the trial judge had reference to evidence which **went** to the jury, and not to the evidence which **did not go** to the jury; that he had reference to evidence which went to the jury on the negligence and liability of Pawhuska Ice Company, and not to evidence against the Van Noy Interstate Company, which did not go to the jury.

We cannot believe that the trial judge would sustain a demurrer to the evidence and then state that the evidence, if believed by the jury was sufficient to establish all the allegations in plaintiff's petition. However, if the judge referred to the evidence against the Pawhuska Ice Company, which **was** submitted to the jury, it is evident from the verdict that the **jury did not believe it,** and if the reference was to evidence against the Van Noy Interstate Company, if there was any, it is evident that the **court did not believe it.**

But overshadowing all this is the record itself, which fails to show one word of testimony, believable or unbelievable, which tends to show either negligence or liability on the part of the Van Noy Interstate Company. Neither does the record show that any effort was made to prove either negligence or liability on the part of the Van Noy Interstate Company; hence the demurrer to the evidence against such company was properly sustained.

The second contention is in regard to the admission of certain book entries in evidence. This proposition is argued upon four separate grounds, to wit:

"(1)   The witness Hudson did not testify that the entries were correct when made.

"(2)   The entry as to the place Sharp was at any particular time was not admissible under the book account rule.

"(3)   That book accounts are not ever admissible to prove a negative.

"(4)   The books of the Van Noy Interstate Company were not admissible for the reason that the Van Noy Company was not a party to the action at the time the books were offered."

Each of the above grounds is argued at length and many authorities cited to support each ground, but however true they may be as abstract propositions of law, they have no application in this case, because no account or book of accounts was admitted in evidence. The record contains no account or book of accounts, nor does it show that any account or book of accounts was even offered in evidence.

It appears from the record that one T. B. Hudson, used as a witness for defendant Pawhuska Ice Company, was allowed to refresh his memory by reference to certain memoranda or sales sheets, the nature of which will appear further on, which had been made and kept by said witness in the regular course of his duty under his employment, and in the making of which the news agent, R. E. Sharp, himself, had assisted and co-operated, and had a carbon copy of same. The purpose of Hudson's testimony was to show that plaintiff, Sharp, did not make the run to Pawhuska on the day on which he claimed to have received his injuries.

The defendant Van Noy Interstate Company was engaged in furnishing supplies to news agents on passenger trains. The witness Hudson was in the employ of said company as bookkeeper and manager at Muskogee, and as such it was his duty to keep check on news agents who obtained supplies from his company for sale on trains running out of Muskogee. This was done by "stock sheets" or "sales sheets," on which were columns, down which were printed the names of the different articles sold on trains by news agents, as, for example, tobacco,-----------, peanuts,----------, Coca Cola-------, etc., extending on down the column, so that to the right of each named article could be entered the number of such articles taken out on each trip and by whom taken. One column was the "outgoing column", in which was entered the number of articles taken out for the trip: in one column, the "sales column", the agent checked the number of the articles sold; and in one column, the "in-coming column," was entered the number of articles returned. When the news agent started out on each run, the articles turned over to him for that run were entered opposite the name of each article in the out-going column; upon his return the unsold articles on hand were likewise entered in the "in-coming column";

the difference between the articles checked out to the agent and the articles returned by the agent showed the sales of each article. On each of these sheets was also entered the name of the agent, the date of each run and the number of the passenger train on which the run was made, and the place to and from which the round trip was made. The method of making out these sheets upon return was by triplicate carbon sheets, the agent taking one, one being retained in the Muskogee office, and one forwarded to the home office at Kansas City. When the agent returned from each run he would read off to the bookkeeper the number of each article returned, and the bookkeeper, Hudson, would enter same in the "return column", or "in-coming column", give one copy to the news agent, retain one at their office at Muskogee, and forward the other to the home office at Kansas City. These were the memoranda from which the witness Hudson was permitted to refresh his memory as to the date of runs each news agent made and the number of the train upon which the run was made, who made the run, and the place to and from which the run was made.

The four objections made here were not made to the court below. The only objection made below was to the system of keeping these sheets. The record shows:

"By Mr. Neff: We are objecting particularly now to their system.

"By the Court: All right; overruled".

The court ruled upon the objection made to it, and not upon either of the additional objections which are argued here.

The rule is that counsel should specifically state the grounds of objection so that opposing counsel may have opportunity to meet same and the court be enabled to pass upon same. See McDonald, Admr, v. Strawn, 78 Okla. 271, 190 Pac. 558. It is the objection made, and not those which might have been made, that the court is called upon to rule. See Fender, Adm'r, v. Segre et al., 41 Okla. 318, 137 Pac. 103; Muskogee Trac. Co. v. McIntire, 37 Okla. 684, 133 Pac. 213.

The trial court evidently saw no fault in the system, and we see none here. We cannot conceive of a system of keeping accounts of this character that could be less liable to error or more clearly competent to be used as a reference to refresh a witness's memory. In the very nature of the system and the method of making the entries, all probability of error is eliminated and the news agent himself co-operating with the bookkeeper in making the entries, caling off the items to be entered, the sheets being made in triplicate, one of which being furnished to each interested party, such sheets, in the absence of any suggestion of error or amendment, will be presumed to be correct and their correctness acquiesced in by the parties interested. See 17 Cyc. 397; also page 394, Id., as to the effect of such entries where both parties participate or co-operate in making the entries, as was done in the case at bar. Also page 398, Id., as to the use of such entries for the purpose of corroboration or impeachment of a witness.

Plaintiff in error urges the inadmissibility of such entries for the reason that the witness Hudson did not say they were correct, and quotes from the record as follows: "Did you keep a daily record in the usual course of business, which covers the business done by each news butch of his run on every particular day?" Counsel quotes the answer as follows, to wit: " A. No, sir." The record does not show exactly these words. The record shows the answer to have been, "Yes, No, sir", with a line drawn through the word "Yes". The word "sir" is not italicized in the record. Counsel for defendant in error contends that the reporter made a mistake as to this answer, and that same was called to the court's attention in the settlement of the case-made, and that counsel for plaintiff in error insisted that no change be made in the record, but, be that as it may, the record discloses the following questions and answers:

"Q. What are your duties as manager of the Van Noy Interstate Company of Muskogee?

"A. Well, I check the news agents in and out—all of them—give them their stuff and take their money.

"Q. Please tell the jury how you run that business down there.

"A. Every day I keep a written report of every agent—what he takes out—what he sells on his train and make a report on what he has when he comes in. * * *

"Q. Have you any means of knowing what the sales of a butch are on any particular trip?

"A. Yes, sir, every trip.

"Q. How do you tell that, Mr. Hudson?

"A. Well, they call the sale to me and I check the sale and make out three copies of trip sheet.

"Q. Please just explain as near as you can how you check on the news butch?

"A. Yes, sir. All of these goods are charged to number going out—it reads down

like this (designating). The other one is 'number returned'—that is a different column there—and one is 'number sold'—on his trip coming in—he puts down in this column here the number returned, like he has ten here and he has eight back—eight from ten leaves two, you see. When he comes in he calls this list off to me and everything checks up, cigars and tobacco and soda—he takes the list himself and calls it off to me—I don't see his list without once in a while I will copy it down, but he calls it off to me himself—I keep the two sheets and give him the third one—I keep that for our sheet and deduct his commission and that is all there is to the sale.

"Q. After deducting his commission, then there is a balance of cash turned over to you?

"A. Yes, sir; over to me.

All this data being kept as an essential part of the company's system of keeping an exact and complete check on each agent, and all being done by him in the regular course of his duty, it was not error to permit the witness to refer to such data to refresh his memory. Whitcomb v. Oller et al., 41 Okla. 331, 137 Pac. 709; Pac. Mut. Life Ins. Co. v. O'Neil, 36 Okla. 792, 130 Pac. 270; M., K. & T. Ry. Co. v. Walker, 27 Okla. 849, 113 Pac. 907; First Nat. Bank v. Yeoman, 14 Okla. 626, 78 Pac. 388; Navarre v. Honea, 41 Okla. 480, 139 Pac. 310. The rule for the admission of books of original entry as announced in the above decisions, obtains even in cases where the opposing party has not participated in the making of the entries, as was done in the case at bar. The essential qualifications to render books of account competent, either as evidence or for reference, as a general rule, may be summed as follows: They must be sworn to be correct; to have been kept in the ordinary course of business, as an essential part of the system of business; must be made at or reasonably near the time of the transaction; must be books of original entries, and must be relevant and material to the issue. The entries in question here met all the foregoing requirements.

Plaintiff in error contends that:

"Mercantile books can only be admitted as affirmative evidence and are never admissible to establish a negative proposition."

Many cases are cited in support of the above rule, but in the cases cited the books sought to be introduced either fail to meet other requirements of the law as to competency, or were not relevant or material to the fact sought to be proved. In no case

cited was the opinion of the court formed solely upon the above rule. In none of the cases cited were books of account rejected as evidence solely upon the grounds of the above rule. In every case cited, wherein the above rule is quoted, the books rejected have been otherwise incompetent. No case is cited which attempts to give the foundation of the rule, nor any reason for its correctness as an abstract proposition of law, and we frankly confess our inability to see any reason for the unqualified application of such rule.

The primary purpose of admitting books in evidence in any case, the primary purpose of admitting evidence of any character in any case, for that matter, is to arrive at the truth in controversy. Hence, if the book of entries be otherwise competent, we see no reason why it should not be equally as admissible to disprove an affirmative as to prove an affirmative, just as competent to prove the falsity of a fact affirmed as to prove the truth of a fact affirmed, the purpose in either case being to arrive at the truth. In fact, we are unable to conceive of any kind of evidence which does not, in a measure, partake of both an affirmative and negative character. We can conceive of no character of evidence which does not have both an affirmative and negative effect. If it proves an affirmative, it thereby logically disproves the reverse.

However, if there is a reason for the unqualified application of such rule in any case, it would not obtain under the circumstances in the instant case. In this case the entry of the name of the agent and the date of the run, the place to and from which the run was made, was an essential part of the system of keeping a complete check on the business done by the agent, and was also essential to each agent, in order that he might be fully prepared to show just what was due him on any particular run. Therefore, he was given a triplicate of every entry made. Besides, the plaintiff alleged that he was in the employ of the Van Noy Company and sought to hold such company jointly liable with the Pawhuska Ice Company for the injuries received. In the absence of any allegation or claim that the trip in question had been made in the employ of some other company, and that supplies had been obtained from some other company, the sheets in question were competent, plaintiff being in possession of all the facts which the witness possessed. Besides, the sheets showed affirmatively that Sharp made the run from Mus-

kogee to Ft. Smith and return on September 10th, 11th, 12th, and 13th, on trains 4 and 3, leaving Muskogee about 6:10 a. m., going to Ft. Smith, and returning to Muskogee about 4:50 p. m. These facts tend to show affirmatively that Sharp made the run to Ft. Smith and return on September 10th, 11th, 12th, and 13th. If they did affirmatively show that he went to Ft. Smith, they negatived the allegation that he went to Pawhuska on the 11th. There was no error in permitting the witness to refresh his memory from these sheets.

The third proposition is that the court erred in rejecting the testimony of R. E. Sharp offered for the purpose of showing bias and prejudice on the part of the witness T. B. Hudson against Sharp. This contention is made upon the assumption that Hudson had testified that he had furnished a suit of clothes to Sharp at the time Sharp began to work as news agent; the purpose of this testimony being to show that Hudson had not purchased a suit of clothes or furnished a suit of clothes to Sharp, and by thus contradicting Hudson's testimony. show his prejudice against Sharp. It was not error to reject this testimony. The witness Hudson did not testify that he had furnished a suit of clothes to Sharp, but, on the contrary, the record shows the following:

"Q. You did not furnish that blue suit? A. No, sir. Q. You did not get him one, did you? A. No, sir. Q. And you don't know where he got it? A. No, sir."

The fourth proposition is that the court erred in allowing the witness DeBarr to remain in the courtroom during the trial, other witnesses being under the rule. The witness DeBarr was subpoenaed as an expert on the effect of ammonia upon the eyesight. In the absence of any showing that the substantial rights of plaintiff were prejudiced by the fact of such witness remaining in the courtroom, he being an expert witness on an abstract proposition, his being excused from the rule will not be taken as reversible error.

The fifth proposition is that the court erred in not allowing plaintiff to prove the effect of ammonia upon the human body by witnesses who had worked at ice plants. Such witnesses not having qualified as experts, it was not reversible error to reject their testimony.

The sixth proposition goes to alleged errors in the instructions. We have examined the court's instructions, and find that they fairly state the law; we have likewise examined the contentions made by plaintiff in error with reference to such instructions, and find that such contentions are not warranted by the instructions.

In our opinion the court's instructions fairly cover the law applicable to the facts in the case, and that no substantial error is committed therein, also that the verdict of the jury is strongly supported by the evidence. The judgment is affirmed.

JOHNSON, C. J., and KENNAMER, BRANSON, and MASON, JJ., concur.