## OKLAHOMA AID ASS'N v. THOMAS.

No. 16980. Opinion Filed April 19, 1927.

Rehearing Denied June 7, 1927.

(Syllabus.)

1. **Appeal and Error—Sufficiency of Evidence—Conclusiveness of Verdict in Action to Collect Life Insurance.**

In a law action upon a benefit certificate held by deceased at the time of his death, tried to a jury, where there is any competent evidence reasonably tending to support the verdict of the jury, the same will not be disturbed on appeal.

2. **Insurance—Action on Benefit Certificate —Suicide as Defense—Burden of Proof.**

In an action upon a benefit certificate or insurance policy, where the defense is the suicide of the insured, the burden of establishing self-destruction by preponderance of the evidence is upon the insurer.

3. **Same—Evidence—Statutory Death Certificate Inadmissible.**

The death certificate provided for by chapter 79, article 19, C. O. S. 1. under the head of "Vital Statistics" to be made by the attending physician or coroner, and the statute making same prima facie evidence of facts therein stated, applies to questions arising under these provisions, so far as they involve public rights and public health, and is the proper exercise of the police power of the Legislature, but does not change the statutory and common-law rules of evidence in controversies of private parties growing out of contracts, and a certified copy of a death certificate is not admissible in an action up-

on an insurance policy for the purpose of showing suicide.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Ralph Lee Thomas, minor, by A. D. McMullen, guardian, against the Oklahoma Aid Association. Judgment for plaintiff. and defendant brings error. Affirmed.

Snyder, Owen & Lybrand, for plaintiff in error.

Wright & Gill, for defendant in error.

CLARK, J. Plaintiff in error was defendant below; defendant in error was plaintiff below. For convenience parties will be referred to as they appeared in the trial court.

This is an action by Ralph Lee Thomas, a minor, by his guardian, against the Oklahoma Aid Association, to recover the sum of $1,000 by reason of a certain benefit certificate held by Norman Thomas, father of the plaintiff. at the time of his death on the 6th day of November, 1924. To the petition was attached a copy of the benefit certificate, and it was alleged that the death of Norman Thomas was caused by gunshot wounds, and that at the date of his death he was in good standing in said association, and that Ralph Lee Thomas was his beneficiary named in said certificate.

The answer of the defendant admitted the execution of said benefit certificate, and that the said Norman Thomas in his lifetime was a member of said Association, but pleaded that the constitution and by-laws of the Oklahoma Aid Association provided that such certificate should be null and void and that no benefit should be derived thereunder or by reason thereof in case of the suicide or self-destruction of the member on whose life it was issued; that the said Norman Thomas committed suicide, in this, that the gunshot wounds from which he died were self-inflicted.

Plaintiff's reply was by way of general denial, and the only issue in the case was whether or not Norman Thomas committed suicide.

This cause was tried to a jury, resulting in a verdict for plaintiff. The court rendered judgment thereon, and in due time defendant brought this cause here for review.

Defendant makes 5 assignments of error, which may be considered under the following headings:

(1) Was defendant entitled to a peremptory instruction in its behalf?

(2) The giving of instruction No. 6 and

the refusal of defendant's requested instructions Nos. 1 and 4.

(3) Erroneous ruling on testimony prejudicial to the defendant.

(4) The verdict was contrary to the evidence and instructions.

Plaintiff introduced in evidence the benefit certificate, which was admitted by the pleadings, and rested. Defendant offered in evidence the death certificate from the Bureau of Vital Statistics of the state of Oklahoma as to the said Norman Thomas, deceased, which was objected to by plaintiff as incompetent, irrelevant, and immaterial. The court overruled said objection, permitting said death certificate to be introduced in evidence. Defendant also offered article 5, section 3, of the constitution of the Oklahoma Aid Association as the same existed on September 7, 1922, which reads as follows:

"The association shall not be liable to any beneficiary or any beneficial certificate or policy in case of death of the insured where such death is caused by suicide or in case the beneficiary is the direct cause of the death of the insured."

W. B. Dennis, called as a witness on behalf of the defendant, stated: That he was the State Registrar of Vital Statistics and that the certificate offered as defendant's Exhibit No. 1 was a true, correct, and certified copy of the death certificate as to the death of Norman Thomas, filed in his office.

It appeared from the certificate of the death offered, after giving general information as to the death of Norman Thomas and that death occurred on the date stated above. at 7:30 a. m., that the cause of death was as follows: "Gunshot wound." That said death certificate had the following paragraph:

"State the disease causing death, or, in death from violent causes, state (1) means of injury; and (2) whether accidental, suicidal, or homicidal."

It appears that the words "accidental, suicidal, or homicidal" are printed on the death certificate and in this particular certificate parentheses had been drawn around the word "suicidal." Mr. Dennis further testified:

"Q. Mr. Dennis, your attention is called to the parentheses around the word 'suicidal.' State to the jury the significance of these parentheses as ordinarily understood, and by your office?

"A. This is the method which is used on all of our records, unless occasionally they write it in up there, but probably 98 per cent. of them are so indicated just as this is.

"Q. Then its significance is what?

"A. Its significance is suicide. We would tabulate that as a suicide in our tabulation of statistical work."

This death certificate or information contained therein was apparently given to Mazie B. Menten, county registrar, by Walter Benson, who signed as acting coroner. Walter Benson, called as a witness, testified that he resided in Oklahoma City and that during the year 1924 he was justice of the peace and as such was acting coroner. He testified that he viewed the body of Norman Thomas, which was found lying in the alley between Harvey and Hudson streets in about the four hundred block on South Hudson. That it was early in the morning, and the body of Norman Thomas was lying straight out on its back and that he examined the wound just back of the ear, from 2 to 3 inches back of the right ear. That he did not probe the wound. That the bullet lodged in the head and he was unable to state the course it took. That there were no powder burns near the wound. That a gun of 32 caliber was lying near the body; that he made a report of the death as acting coroner; that no inquest was held to determine the cause of death. that he mailed his report, supplied by the undertaker, to the city health department, to Leo Menten; that he reported the cause of the death of Norman Thomas as "gunshot wound" and that he did not indicate in his report that the same was suicide; that he did not make any report to the Bureau of Vital Statistics of the state; that he made his report to the city health department, and that was all that was ever made, and that the local registrar was responsible for the rest.

Several witnesses were examined as to the position of the body, location of the wound of the deceased, and as to the gun found lying near the deceased.

After both sides had rested. defendant offered requested instructions Nos. 1 and 4, as follows:

"1. You are instructed, gentlemen of the jury, that under the evidence in this cause the defendant has introduced competent testimony making out a prima facie case of suicide on the part of the insured. Norman Thomas, and that because of the failure of the plaintiff to introduce sufficient and proper competent evidence to rebut said presumption, your verdict must be for the defendant."

"4. In this case the presumption against suicide of Norman Thomas, relied upon by plaintiff, had the effect of placing the burden of going forward with the evidence upon the defendant, but such presumption is not evidence and stood only until overcome by contrary proof; and when the defendant introduced evidence making out a prima facie case of suicide on the part of said Norman Thomas, then such presumption entirely disappeared and must, accordingly, be by you disregarded in arriving at your verdict; and unless such prima facie case of suicide has been, in your judgment, overcome by the preponderance of the evidence adduced. your verdict must be for defendant"

—which were by the court refused and duly excepted to by the defendant.

Defendant complains of instruction No. 6 given by the court. It is defendant's contention that when a certified copy of the death certificate was admitted in evidence. the defendant made out a prima facie case of suicide, and the court should have given its peremptory instruction.

As we view this case, it is necessary to discuss the statutes provided for the keeping of such records. Chapter 79, article 19, C. O. S. 1921, under the head of "Public Health and Safety." contains the rules and regulations for keeping the vital statistics for the state of Oklahoma. all under the supervision of the State Commissioner of Health, who appoints the State Registrar of Vital Statistics and also appoints the local registrar of vital statistics for each registration district in the state. It is the duty of the local registrar to issue a permit for the burial or removal of all bodies where death occurred in the registrar's district or the body was found therein. It further provides that no such burial or removal permit shall be issued until competent and satisfactory certificate of death has been filed with him. It also provides for the filing of a report with the local registrar by all physicians or midwives of all births. In case there was no physician or midwife, then it makes it the duty of the father or mother to report to the local registrar the fact of such birth with full information pertaining thereto.

The certificate of death provided for in section 8989. C. O. S. 1921, provides for "the date of death * * * and cause of death * * * that the medical certificate shall be made and signed by the physician. if any, last in attendance on the deceased * * * and he shall further state the cause of death so as to show the course of disease or sequence of causes resulting in the death, giving first the name of the disease causing death * * * and the contributing (secondary) cause, if any, and the duration of each * * * and if from violence, the means of injury shall be stated and whether (probably) accidental, suicidal, or homicidal, it shall be determined by the coroner or medical examination. * * *"

As we view this case, should the death certificate offered in evidence make out a prima facie case of suicide, then the court erred in refusing requested instructions Nos. 1 and 4, but should the death certificate be inadmissible in this cause or fail to make out a prima facie case of suicide, then the court did not err in refusing requested instructions Nos. 1 and 4, and there was no error in giving No. 6, complained of by plaintiff in error.

The report made herein by Walter Benson, acting coroner, indicated suicide. However, he testified that he did not report this as a case of suicide and that the death certificate was error; that he made no report to the State Registrar of Vital Statistics; that his report was made to the city health department, and that the death certificate, a certified copy of which was introduced in evidence. was not a true and correct copy of his report as acting coroner. This certificate was sent to the State Registrar of Vital Statistics by the local registrar, Mazie B. Menten.

So, if we should hold that a certified copy introduced in evidence made out a prima facie case of suicide, then this particular certified copy has been impeached. But we cannot believe it was the intention of the Legislature in providing for a record of births and deaths to change the rules of evidence in the trial of a suit on contract.

The question of whether or not a physician's death certificate made out as provided by this chapter as to the cause of death would be admissible and make out a prima facie case, we are not called upon to determine in this case. The cause of death in this case, as shown by said certificate. was "gunshot wound," but to go further and say by whom the gunshot wound was inflicted would go beyond the authorized rules of evidence and permit hearsay evidence to be introduced to prove the commission of a crime.

Section 9003 provides:

"* * * Any such copy of the record of birth of death, when properly certified by the State Registrar, shall be prima facie evidence in all courts and places of the facts herein stated."

Defendant cites the case of Bozicevich v. Kenilworth Mercantile Company, 199 Pac.

406, from the Supreme Court of Utah, as authority on this provision. It seems that the state of Utah has a statute similar to ours. While this decision is persuasive, it is not binding on this court. In the case at bar we are of the opinion that the trial court erred in admitting the death certificate in evidence as proof of who inflicted the wound causing the death of Norman Thomas.

This case best illustrates the danger of following the rule laid down by the Utah court. In this case we have the death certificate stating the cause of death and that the wound was inflicted by the deceased, signed by Walter Benson, acting coroner, who testified that he made no such report; that he did not know and had no way of knowing whether or not the deceased committed suicide, and that he did not so report. This testimony shows the danger of permitting this death certificate to be introduced to make out a prima facie case of suicide.

It is our opinion that the Legislature, when they inserted the words "(probably) accidental, suicidal, or homicidal," did not intend that said death certificate, when introduced in evidence. should be held to make out a prima facie case of homicide or suicide. Just for illustration, if a physician or coroner should make out a death certificate stating the deceased came to his death by gunshot wound inflicted by "John Doe," and this rule would permit the introduction of this death certificate, it would make out a prima facie case of murder against "John Doe." This, of course, is not likely to happen, but it is within the principle contended for by defendant.

It is our opinion that the Legislature provided for the keeping of vital statistics in the exercise of its police power for the purpose of keeping an accurate record of births and deaths and of the diseases causing death, and so that the health authorities may be better enabled to combat diseases. The attending physician or coroner might be able to state the cause of death, just as was stated here, gunshot wound. But to go further and state by whom inflicted wou'd change all the rules of evidence in cases in which this certificate could be admitted.

We agree with the defendant that the records of births and deaths, when properly kept as required by law, and made a matter of public record by statutes, as such, are admissible in evidence for certain purposes. But we cannot agree that a certified copy thereof would be admissible for the purpose of showing who inflicted the gunshot wound.

The Legislature has undoubted right and authority to establish rules of evidence and to determine what constitutes presumptive or prima facie evidence of the facts sought to be proven. The Legislature in this enactment was dealing with public health, not with the rules of evidence to be enforced or to be used in determination of rights between private parties.

In this case there is no question but that the deceased died of gunshot wound. The certificate was not essential to establish the cause of death, but was offered by the defendant in an effort to prove suicide or who inflicted the mortal wound.

The Appellate Court of Indiana in the case of Brotherhood of Painters. Decorators and Paperhangers of America v. Barton et al., 92 N. E. 64, in the fifth paragraph of the syllabus lays down the following rule:

"Acts of 1907, c. 152, entitled 'An act to collect accurate records of deaths * * * contagious diseases * * * prescribing the duties of the State Board of Health,' etc., and requiring physicians to report to the health officers all deaths, and that records of deaths shall be kept by the health officers, etc., was enacted in the exercise of the police power to prevent the spread of contagious diseases and to promote the public health, and does not interfere with private rights or create a new rule of evidence, and a record of a board of health giving the cause of death of a member of a fraternal association is not admissible in evidence in an action on the certificate."

Also see Alice A. Davis, Respondent, v. Supreme Lodge, Knights of Honor, Appellant, 165 N. Y. 159; the case of James A. Beglin, as Administrator of Catherine L. Beglin, Appellant, v. Metropolitan Life Insurance Company, Respondent, 173 N. Y. 374, the syllabus of which reads as follows:

"The general statute requiring the registration of vital statistics and making the record prima facie evidence of the facts therein set forth (L. 1885, ch. 270, No. 3 subd. 5) applies to questions arising under its provisions so far as they involve public rights, but does not change the common-law ru'e of evidence in controversies of private parties growing out of contracts; therefore, a copy of a record of a city board of health embodying vital statistics cannot be proved in an action upon a life insurance policy for the purpose of showing that a material statement made by applicant for insurance as to the cause of her mother's death was false."

The authority of Walter Benson, who signed as acting coroner, is not questioned by plaintiff's brief. However, defendant fails to cite any statute authorizing the justice of

the peace to act as coroner where no inquest is held. We are of the opinion that the court's instruction complained of was fair, and properly stated the law of the case.

Defendant complains of evidence improperly excluded. The defendant offered as evidence that the acting coroner, Walter Benson, had stated to third parties that he had viewed the body of Norman Thomas and that in his judgment the cause of death was a plain case of suicide. We think the court properly excluded this testimony, as it would have been a conclusion of the coroner, would have been hearsay, and would have been highly prejudicial to plaintiff's case.

Death having been proven, the burden shifted to the defendant to prove suicide as a defense in this cause. This, being a question of fact, was submitted to a jury on conflicting testimony and decided against the defendant's contention. The rule that where there is any competent evidence reasonably tending to support the verdict of a jury the same will not be disturbed on appeal is well settled in this jurisdiction.

Finding no error, judgment is affirmed .

BRANSON, C. J., and MASON, PHELPS. LESTER, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 4 C. J. p. 853, §2834; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 76. (2) 29 Cyc. p. 235; anno. 35 L. R. A. 263; 4 L. R. A. (N. S.) 637; 42 L. R. A. (N. S.) 635; 50 L. R. A. (N. S.) 1008; 37 A. L. R. 167; 14 R. C. L. p. 1236; 3 R. C. L. Supp. p. 362; 6 R. C. L. Supp. p. 869. (3) 29 Cyc. p. 243; anno. 17 A. L. R. 359.