**J. G. DRAPER, Plaintiff in Error,**

v.

**A. D. LACK, Defendant in Error.**

**No. 38196.**

Supreme Court of Oklahoma.

May 19, 1959.

Arnold T. Fleig, Oklahoma City, for plaintiff in error.

Edgar Lonas, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action for recovery of the balance allegedly due on a promissory note, and for foreclosure of a chattel mortgage securing its payment, executed and delivered as part of a transaction in which plaintiff in error, hereinafter referred to as defendant, and his wife purchased from defendant in error, hereinafter referred to as plaintiff, certain fixtures and equipment located, and used, in a combination soda fountain, restaurant and sundry store, at 21 West Grand, Oklahoma City, originally known as "Lou's Fountain." The purchase price balance, for which defendant executed the note was $2,500, which, plus interest at the rate of six percent per annum, was originally to

have been paid at the rate of $100 each and every month. Soon after defendant and his wife started operating the business, however, he found that the fixtures were defective and that it would be necessary to purchase a replacement for the soda fountain, for which said purchase he borrowed some five or six hundred dollars from the City National Bank. Owing to these developments, defendant's and plaintiff's original agreement was modified as evidenced by the following letter:

"Dear Mr. Lack:

"In connection with our purchase from you of the fixtures located at 21 West Grand, it is our mutual understanding that at any given date *should it become necessary for us to discontinue operation of the business at that address, title to these fixtures will thereupon revert to you without further liability on our part except that we shall be liable to you for any payments then delinquent* on the principal, interest, and rent.

"It is further mutually understood that in consideration of our purchase of a fountain to replace the one now installed at 21 West Grand, you will accept $50.00 per month from us as payment on the principal of our note to you until the note at the City National Bank covering purchase of said fountain is paid in full. It is mutually understood that your acceptance of $50.00 per month will not place us in default on the payments due you.

"We are enclosing two copies of this agreement and would appreciate your signing and returning one to us for our files.

"_____

J. G. Draper

"_____

N. E. Draper

"_____

Admiral D. Lack." (Emphasis ours.)

(The crucial issue injected into the trial of the case called for determining the mean-

ing of the emphasized wording of the above quoted letter and for deciding when, if ever, under said wording, as applied to the hereinafter related facts, title to the mortgaged chattels reverted to plaintiff (without foreclosure), and defendant's liability for subsequently-accruing payments on his note to plaintiff ceased).

After defendant and his wife had operated the business during the rest of the year 1953, and made the payments due on plaintiff's note through December 15, 1953, "business dropped off", note payments coming due during the first part of 1954 became delinquent, and defendant was attempting to sell the business. Finally, about May 1, 1954, after expiration of various licenses he had obtained in connection with operating the business, defendant and his wife sold the establishment's stock and leased the business for six months to one Lester Moore, to whom they gave the option of purchasing the business at, or before, the end of said six months, for the sum of $3,300.

When Moore's said lease expired, he did not exercise his option to purchase, but closed the establishment, giving the key to it back to defendant. It has remained closed ever since, but it was not until after plaintiff had started his unsuccessful attempts to collect the balance remaining of the sums referred to in the note, after deduction of the $950 defendant had paid thereon, that defendant, through his attorney, forwarded said key to plaintiff, in his attorney's letter dated October 3, 1956. Within a month thereafter, plaintiff instituted the present action, seeking, in addition to foreclosure of his chattel mortgage, money judgment against defendant in the sum of $1,927, as the amount due on the principal of the note, plus $377 as interest, and $192.70 as attorneys fees.

In both his amended answer, and at the trial, defendant took the position that under the terms of his agreement with plaintiff, evidenced by the above quoted letter of April 15, 1953, it became necessary for him and his wife " * * * to discontinue operation of the business * * *" on

one of two dates, as follows: Either on May 1st, (1954) when their agreement with Moore became effective, or on November 1st, (1954) when it expired; and that under the parties' agreement, evidenced by specific wording of said letter, title to the mortgaged fixtures reverted on one of said dates, and none of the loan installments whose due dates were subsequent thereto were collectible obligations under the express terms of said agreement. Defendant maintained that if November 1st was determined to be the date title reverted to plaintiff, then the entire sum he owed plaintiff on the principal of the obligation (consisting of only payments *then* delinquent) was $300.00; but, if said title reverter was found to have occurred on May 1st, then plaintiff had been overpaid in the sum of the monthly installments defendant had paid *after that time,* totalling $200.00, for which sum defendant sought recovery against plaintiff in a "Counter-Claim."

At the close of the evidence, the court was requested to instruct the jury, in accord with defendant's theory, to return a verdict either for defendant for the amounts due on May 1, 1954, or for plaintiff for the amount due November 1, 1954. This request, in addition to other requests by the parties for other specific instructions, was refused; and the jury thereafter returned a verdict stating that it found "the issues for the defendant" on his counterclaim, but fixed the amount of his recovery at "*$ None*". When individual members of that body were interrogated about the verdict, it was revealed that the jury had decided that defendant discontinued operating the business on May 1, 1954, and therefore, under the terms of the letter of April 8, 1953, title to the mortgaged property reverted to plaintiff on that date. In explanation of the jury's granting defendant no money recovery, it was also revealed, by said interrogations, that the jury had concluded that the aforementioned money defendant obtained through his transaction with Moore—and then paid plaintiff—really belonged to plaintiff, and defendant was not entitled to any of it

back, because said transaction was between Moore and plaintiff, instead of between Moore and defendant, "regardless of what" defendant thought at the time. This latter conclusion was contrary to the reasonable inferences to be drawn from the letter, and undisputed testimony, to the effect that plaintiff was not a party to the transaction with Moore, and had no knowledge thereof until he was informed of it by letter several days after Moore began operating the business under it. This conflict between the evidence, and the jury's conclusion about the agreement and transaction with Moore, was one of the grounds upon which plaintiff moved for a new trial, after judgment had been entered for defendant in accord with the verdict. The trial court sustained plaintiff's motion for a new trial, and defendant has perfected the present appeal.

Under his first three propositions for reversal, defendant attempts to show that the trial court erred in granting the new trial, first, by showing that the jury, by its verdict, correctly interpreted plaintiff's and defendant's agreement evidenced by the letter of April 15, 1953. He fails to disclose, however, how the jury, merely on the basis of said contract, could have arrived at its conclusion concerning an altogether different contract, namely, the one between Moore and defendant, which the jury (in some unexplained manner) decided was between Moore *and the plaintiff.* If the jury reached this latter conclusion because it thought that the arrangement with Moore was entered into by defendant, as plaintiff's agent, or if not—that plaintiff later adopted or ratified it as his own—they so concluded without any direct (as distinguished from circumstantial) evidence to that effect, and without any court instructions to guide them on such subject or issue. Defense counsel concede that "the court might have more specifically instructed the jury as to the meaning of the (plaintiff-defendant) contract", but he asserts, in substance, that if he had, "the jury would have arrived at the same verdict." We are not convinced of the soundness of such a prediction and

regard it as too speculative, in view of the record in this case, to justify application of the harmless error doctrine. While the record does not reveal which one or more of the grounds alleged in plaintiff's motion for a new trial constituted the basis of the trial court's ruling sustaining it, said grounds (contrary to defendant's bare assertion in advancing his Fifth Proposition) were sufficiently broad and varied to encompass a wide field of error, one or more of which might reasonably account for the jury's having become confused and/or having considered factors not mentioned or dealt with, even inferentially, in the court's instructions.

Under defendant's "Fourth Proposition", he endeavors to show that the trial court committed no error in refusing to give the instructions requested by plaintiff, but—other than a bare assertion to that effect in a preceding proposition—he wholly fails to demonstrate that the trial judge discharged his duty of instructing the jury, on his own motion and without request, on the fundamental issues of the case. See Garner v. Myers, Okl., 318 P.2d 410, 414. Here, the trial court's instructions contained nothing about agency, ratification, adoption, what is a volunteer payor or voluntary payment, etc. If none of these topics refer to fundamental issues in the case, then the jury, in giving some such matter controlling importance in arriving at its verdict—as it apparently did—was laboring under a misapprehension.

In Armstrong v. Chickasha Cotton Oil Co., Okl., 258 P.2d 1174, we followed previous cases pointing out that since the granting of a new trial only places the parties in a position to have the issues between them again tried, the showing for the reversal of such a ruling should be stronger than where the alleged error is the refusal of a new trial. And, in Ernest Wiemann Iron Works v. Hoerner Boxes, Okl., 332 P.2d 10, 11, we demonstrated that in reviewing an order or judgment granting a new trial, the "clear showing" of manifest error or abuse of discretion in such matters must enable us to "say with certainty" that the basis of the ruling did not, contrary to the (expressed or implied) opinion of the trial judge, constitute prejudicial error. On the basis of the record, we cannot so say in the present case. The order and/or judgment appealed from is therefore affirmed.