Dr. John E. HORN and Dr. F. R. First, Plaintiffs in Error,

v.

Loyd G. STURM, Administrator of the Estate of Patricia McElmurray Sturm, deceased, Defendant in Error.

No. 40750.

Supreme Court of Oklahoma.

March 16, 1965.

Rehearing Denied and Supplemental Opinion Filed Nov. 23, 1965.

Hardy Summers, A. Carl Robinson, Julian B. Fite, Muskogee, for plaintiff in error, Dr. John E. Horn.

Foliart, Shepherd & McPherren, Oklahoma City, for plaintiff in error, Dr. F. R. First.

Paul W. Brightmire, Tulsa, for defendant in error.

BERRY, Justice.

Plaintiffs in Error, defendants in the trial court, have appealed from an order entered by the trial judge sustaining a motion for new trial by defendant in error, plaintiff below.

The action originally was brought by plaintiff to recover damages for wrongful death of plaintiff's decedent, alleged to have resulted from various acts and omissions of defendants which were charged to have constituted medical malpractice. Trial to a jury resulted in a verdict for defendants, following which plaintiff filed motion for judgment notwithstanding the verdict and motion for new trial. During trial a demurrer had been sustained and the action dismissed as to one defendant, which action provided a separate appeal by that defendant and requires no consideration herein. The appealing defendants filed motion to strike plaintiff's motion for new trial. All motions were heard contemporaneously, and at conclusion of the hearing the trial court sustained the motion for new trial against the named defendants. The trial court also overruled defendants' separate motion attacking the motion for new trial upon the ground same was not filed within time, and upon other grounds.

Each defendant has filed separate brief attacking the propriety of the trial court's action, the claims for reversal being presented under numerous propositions and subdivisions of argument. Much of the argument individually advanced can be considered together, being based upon the same matters and rulings by the trial court. One contention advanced is that it was reversible error to grant new trial as to one defendant since the evidence was insufficient to support any judgment against this defendant. Since the matters hereinafter discussed are dispositive of the appeal, and because the case must be retried, we decline consideration of those contentions and supporting argument based upon the asserted insufficiency of the evidence to support any verdict for plaintiff and against a particular defendant.

The matters which provide the basis of this appeal are disclosed by the following summation. Trial of this case consumed nearly two weeks' time. At the close of the evidence the trial court consumed more than an hour's time instructing the jury. The proceedings in the jury room consumed an hour and fifty-one minutes to return a verdict for defendants signed by ten jurors.

Plaintiff's motion for new trial alleged numerous errors and irregularities occurring during the trial which prevented plaintiff from having a fair trial, including claims of bias and prejudice on the part of certain jurors. Certain of the matters relied upon were supported by affidavits of participating jurors, and concerned the nature and conduct of deliberations in the jury room.

By written motion defendants moved to strike the motion for new trial, or to strike portions thereof, upon grounds same was improper and, being supported by affidavits of jurors, was in violation of law as invading the privacy of the jury room. The motion also charged that plaintiff's motion for new trial was not filed within time allowed by law. In answer to plaintiff's motion the defendants also filed written response, likewise supported by affidavits of individual jurors, tendered as establishing the falsity of the affidavits offered in support of the motion for new trial. On hearing the trial court denied defendants' motion to strike the affidavits in support of the motion for new trial, for the stated reason that to pass upon the motion for new trial it would be necessary

to consider the jurors' affidavits tendered by both sides.

Both defendants contend the trial court erred in refusing to strike plaintiff's motion for new trial for the reason same was not filed within the time permitted by law. After first refusing to hear defendants' motion to strike for the reason defendants had filed response thereto supported by jurors' affidavits, the trial court did hear evidence relative to whether the motion for new trial was timely filed, whereby the following matters were disclosed.

Trial of the case was concluded on April 12, 1963, hence the statutory time for filing expired April 22, 1963. On the last day one of plaintiff's counsel advised a deputy court clerk of the possibility presentation of the motion might be delayed, and was told the clerk would be available for filing the motion. About 10 p. m. that evening the attorney telephoned the deputy who declined to come to the clerk's office at that hour, but directed that the motion be placed under the locked office door and it would be considered filed. Upon opening the office early the next morning, April 23rd, the deputy clerk found the motion on the floor and thereupon, in accordance with his agreement, marked the document as filed on April 22nd. The factual circumstances relative to the motion having been handled in this manner were corroborated by the deputy clerk's testimony. The deputy also testified such procedure was an established custom, engaged in to accommodate the attorneys in that county. In overruling defendants' motion the court found that filing of plaintiff's motion by delivery to the clerk's office, at the deputy's direction and instigation, was permitted under the procedure which had become an established custom in that county.

Defendants urge although the general rule governing filing motions outside the clerk's office has been relaxed to the extent of holding that delivery to the clerk wherever found constitutes filing, (Bauer v. Samples, 181 Okl. 161, 72 P.2d 813)

nevertheless it is delivery and personal receipt by the clerk which is the governing factor. Thus defendants assert that although plaintiff may have placed the motion beyond control, the factor of personal delivery was lacking and our prior holdings do not indicate that a pleading can be considered filed under such circumstances.

■ We have held consistently that delivery of a pleading to an officer designated by law to receive same, with intention that it be received as a filing without regard to the place of receipt constitutes substantial compliance with the law. McIntosh v. Palmer, 173 Okl. 367, 48 P.2d 815; Bauer et al. v. Samples et al., supra. Under this rule no complaint could be made of the instant filing had the motion been delivered to the deputy clerk at his home, or handed to him during the course of travel upon a highway outside Muskogee County. We are not concerned with the plea that the rule as to delivery for filing cannot be varied by custom. Rather, it seems that the controlling question is whether finding of substantial compliance by personal delivery imports that alone, or whether substantial compliance with filing requirements was made under circumstances revealed in the present case.

■ It is our opinion, and we hold, that the instant motion for new trial was filed in substantial compliance with the requirements for filing of pleadings. We reach this conclusion for these reasons: (1) the method used by plaintiff's counsel in placing the pleading under the door of the clerk's office was in direct response to the clerk's direction; (2) handling of the pleading in this manner placed the pleading in the clerk's hands as effectively as if the clerk personally had come to the office and received same, unlocked the door and placed the instrument on a desk and relocked the door without affixing the filing stamp at that time; (3) the pleading was effectively placed beyond counsel's hands within the time allowed for filing. We see no fatal difference between delivery to the clerk at his residence, and delivery to the

clerk's office at his specific direction. The motion to strike plaintiff's motion for new trial upon such ground properly was overruled.

Defendants' second claim of error arises from the trial court's refusal to strike plaintiff's motion for new trial and the affidavit attached in support thereof. These affidavits encompassed three features or phases of the trial as hereinafter detailed.

1. Two affidavits were executed by jurors who participated in the trial. These affidavits dealt with remarks of certain jurors indicating predisposition to decide the case for defendants without considering the evidence; that the action was trumped up so certain persons could make some money from these doctors; that such suits should not be brought as it only served to ruin the doctors' reputations; that a verdict for plaintiff would result in the doctors refusing to treat the jurors; that these defendants were good doctors and doctors should not be sued; that jury deliberated very little concerning the evidence, but discussed the character of certain people involved and the deleterious effect a verdict against defendants would have upon the community.

2. Affidavits of two of plaintiff's counsel relative to misconduct of certain jurors during the course of the trial, and in their actions in qualifying themselves on voir dire examination as fair and impartial jurors when such was not the case; and also dealing with misconduct of the prevailing parties and their attorneys during the trial.

3. Affidavits of third parties relative to a medical meeting held during course of the trial and participated in by defendants, wherein disciplinary action was taken against a certain doctor, information as to which reached the jury that the disciplined doctor was the same doctor who testified in plaintiff's behalf. The affidavit of this doctor dealt with the large number of local medical doctors in constant attendance during trial; that these doctors also mingled with the jurors in the halls during intermission, by which the jurors were exposed to a variety of conversations and medical opinions; the acts of the doctors participating in the disciplinary action and the manner in which handled by the local medical society created a misunderstanding, and which would have prevented any jury impounded from being unaware of such statements, or being prejudiced thereby.

The defendants' response to the motion for new trial was supported by affidavits of six jurors signing the verdict, the substance of which may be summarized by stating that all matters raised by plaintiff's motion relative to the jury's acts, conduct and deliberations were directly controverted.

In passing upon the motions the court noted that the jurors' affidavits were diametrically opposed, and apparently somebody was guilty of perjury. In overruling the motion to strike the trial court stated:

"* * * The Court further finds that the rest of defendants' Motion to Strike should be overruled; that certain juror affidavits should be admitted, not to impeach the verdict, but to shed light on whether there was any misconduct on the part of the jurors, and because defendants have filed a 'Response' containing jurors' affidavits thus joining issue thereon."

Defendants insist either that plaintiff's motion for new trial should be stricken in its entirety or that the objectionable portion, the jurors' affidavits, should be deleted; and, in either event, the trial court's order sustaining plaintiff's motion must be held erroneous. The basic argument is that the trial court sustained the motion solely because of the jurors' affidavits, whereas had they been stricken there was not basis upon which the motion for new trial could have been sustained.

To support this argument defendants rely upon decisions holding that affidavits of jurors relative to deliberation and misconduct of the jury cannot be received in support of a motion for new trial and

should be stricken. Ponca City v. Swayne, 174 Okl. 576, 50 P.2d 1082; Teeters v. Grost et ux., 145 Okl. 273, 292 P. 356, 71 A.L.R. 179. Also jurors' affidavits are to be received only when tendered to support the verdict rendered, or conduct of the jury during deliberations, when it is sought to impeach the verdict upon motion for new trial. In Dillard v. Star Drilling Machine Co., 180 Okl. 14, 66 P.2d 928, the trial court, in passing upon the motion for new trial, considered a juror's affidavit to the effect that the verdict rendered was a mistake and resulted from misunderstanding, and the verdict signed and returned did not express the will of the majority and was not the verdict of the concurring jurors. In the body of that case is an extended discussion of the rule and the considerations which support adherence thereto.

As early as Carter State Bank v. Ross, 52 Okl. 642, 152 P. 1113, this Court recognized the general rule relative to impeaching a jury verdict but held same subject to qualification. Thus, while a juror's affidavit was not to be received to impeach a verdict, it could be received for the purpose of avoiding a verdict, to show matters occurring during trial, or in the jury room, so long as such matters did not essentially inhere in the verdict. Both the rule and the reasoning derived from consideration of Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917. The rule was followed in Harrod v. Sanders, 137 Okl. 231, 278 P. 1102, and stood until the Sanders case was overruled expressly in Wolff v. Okla. Ry. Co., 184 Okl. 374, 87 P.2d 671. It is recognized that more recent decisions in other jurisdictions apply the principle this Court recognized until overruled in the Wolff case, supra. See Shipley v. Permanente Hospitals, etc., 127 Cal.App.2d 417, 274 P.2d 53; 40 A.L.R. 2d 914; 48 A.L.R.2d 971.

■ We conclude, however, the presently controlling rule is that announced in Dil-

lard v. Star Drilling Machine Co., supra, wherein Syllabus 1 states:

"1. Upon grounds of public policy, jurors will not be heard by affidavit, deposition, or other sworn statement to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it, or that they misunderstood the charge of the court, or that they otherwise mistook the law, or the result of their finding."

The remaining arguments advanced by individual defendants attack the correctness of the trial court's order upon the following grounds: (1) the ruling was arbitrary and capricious and based upon incompetent evidence, suspicion, preconceived ideas and alleged misconduct of third parties; (2) in refusing to state reasons for granting a new trial although so requested both orally and by written motion.

■ Before discussion of such matters it should be noted that a ruling upon a motion for new trial rests largely within the trial court's discretion, and since affirmative ruling thereon merely places the parties in the position of having to try the issues again, the showing to reverse the trial court's order must be stronger than in cases where the claim of error is based upon refusal to grant such motion. Draper v. Lack, Okl., 339 P.2d 784. Therein we stated that the clear showing of manifest error or abuse of discretion must enable this Court to say with certainty the basis of the court's ruling did not, contrary to the trial court's opinion, constitute prejudicial error. Hillcrest Medical Center v. Wier, Okl., 373 P.2d 45.

In City of Tulsa v. Nicholas, Okl., 385 P.2d 816, the Syllabus states:

"The granting of a new trial is within the sound judicial discretion of the trial court, and its action in so doing will not be disturbed on appeal unless the record clearly shows that the court acted arbitrarily or erred in its view of some pure unmixed question of law

and that the new trial was granted wholly because of such erroneous view of the law."

In a proceeding to reverse an order granting a new trial, this Court will review the entire record. Gibson v. Van Leuven, 147 Okl. 217, 296 P. 412; Murr v. Landrum, Okl., 338 P.2d 879. Upon this basis this entire record has been reviewed carefully. The real question to be resolved is whether the erroneous conclusion relative to the jurors' affidavits constituted prejudicial error requiring reversal, without consideration of other matters disclosed by the record?

Because the case must be retried we necessarily avoid complete factual recitation. The court recognized the act of the local medical society in disciplining a local doctor bearing the same name, and related to plaintiff's medical witness, during the course of the trial, although the charges had pended some two years theretofore. Also involved for the court's consideration was the knowledge that a large group of local doctors remained in daily attendance at the trial, together with the fact that these doctors and defendants' attorneys mingled with the people in the courthouse during recesses, including the jurors. The court likewise stated that because of matters which he observed during the course of the trial, and because of complaint made of the actions of counsel and the jurors, he had a "funny feeling" that everything about the lawsuit was not right, even before hearing the motion for new trial.

In response to argument by defendants' counsel that there was no showing to warrant the court in acting upon the affidavits attached to plaintiff's motion, the court stated:

"That is not all the court is bound by to go on.

"I don't think they have had a fair trial in this case, I never thought so, I think there is something back of this thing, and the conscience of this court will not allow this verdict to stand.

That is the way I feel about it. I have no interest in it, it doesn't make a bit of difference in the world to me. But the situation was here, and fraught with so much doubt in the court's mind about this thing, there are too many facts that couldn't be all coincidental that happened in this case, and there is no need for the court to go into it, because the conscience of this court, under the circumstances the court sees, will not allow this verdict to stand, it has to be tried again, nobody is hurt by it, except the fact of the situation, but this is a case that ought to have a fair and impartial trial for both parties, without any suspicion on it at all, and in this case there is suspicion, suspicion that has penetrated to the court, and the court's conscience to such an extent that it couldn't let this go. It is not my pleasure, but it is my duty to vacate this verdict and let this case be tried out in the open and without any suspicion attached to it. Any verdict that has suspicion attached to it should not be allowed to stand."

Based upon examination of this record we conclude that the trial court stated sufficient reasons for granting the motion for new trial. The trial judge was entitled to consider matters derived from his common knowledge, experience and observation during the trial. In view of everything known, observed and involved in the case it was the trial court's determination that plaintiff had not had a fair trial, and the jury's verdict rendered in the face of the surrounding circumstances should not be allowed to stand. The matters disclosed by this record sufficiently negate the claim the court's action was arbitrary or capricious.

Insofar as a portion of the trial court's reasoning was concerned, error inhered therein upon a pure question of law. Review of this record, however, affirmatively supports the trial court's action, since other matters were involved of equal or greater importance to the question of

whether plaintiff had obtained a fair and impartial trial. Had the error relative to consideration of the jurors' affidavits stood alone this case would fall within the rule involving error upon a pure, unmixed question of law. We are of the opinion, and hold, that the trial court's error in this respect did not constitute reversible error, in view of other matters involved in considering the propriety of the motion for new trial. Syllabus 2 of Negrate v. Gunter, Okl., 285 P.2d 194, adequately expresses the rule which must be applied herein:

"It is the duty of the trial court to safeguard the rights of litigants to a fair trial and where, in the opinion of the court, a party has not been so protected, may grant a new trial to obviate the error which has occurred."

Judgment affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS and IRWIN, JJ., concur.

JOHNSON and BLACKBIRD, JJ., dissent.

## SUPPLEMENTAL OPINION ON REHEARING

JACKSON, Vice Chief Justice.

In a petition for rehearing, defendants insist that the evidence was insufficient to establish primary negligence, or to show proximate cause, and that it was therefore error for the court to grant plaintiff's motion for new trial, citing Kurn v. Cochran, 181 Okl. 205, 73 P.2d 433, and Oklahoma City-Ada-Atoka Ry. Co. v. Swink, 186 Okl. 292, 97 P.2d 72.

Plaintiff's decedent, Mrs. Patricia Sturm, was cared for during most of her pregnancy by Dr. Green. On May 31st, during the seventh month of her pregnancy, Dr. Green told her that her baby had died in the womb, and advised her to carry the dead fetus to full term, if necessary, and to await a "spontaneous" termination of the pregnancy. Dr. Green went on vacation about July 15th, after having arranged for Dr. First to take care of Mrs. Sturm. He told Dr. First about the dead fetus, and he in turn had told Dr. Horn about it.

We find expert testimony to the effect that the retention of a dead fetus for as long as four weeks sets the stage for a situation called the "dead fetus syndrome" in which a substance in the blood called fibrinogen sinks to a dangerously low level, creating a condition called hypofibrinogenemia; that when this occurs, the blood will not clot; that proper medical practice requires under such circumstances that fibrinogen be injected into the blood stream to reduce the possibility that the patient might bleed to death during or after the delivery of the dead fetus or surgery in connection therewith.

There is evidence to the effect that Mrs. Sturm entered the hospital on the morning of July 26th; that about 10:13 A.M. she was delivered of a dead fetus while under the care of Dr. First; that Dr. First was unable to control or stop the bleeding that followed, and called Dr. Horn about noon; that Dr. Horn arrived shortly thereafter and performed a vaginal hysterectomy; that both doctors, although knowing about the dead fetus, either failed to recognize the possibility of hypofibrinogenemia, or, having recognized it, failed to take proper corrective measures; that as a result thereof, Mrs. Sturm continued to bleed internally after the conclusion of the vaginal hysterectomy until she died on the morning of July 27th.

We also find expert testimony that a vaginal hysterectomy, although proper for the removal of the uterus of a non-pregnant woman, is not proper for the removal of the greatly enlarged uterus of a woman who has just given birth; that in such case, proper medical practice calls for the removal of the uterus through an incision in the abdomen; that when a vaginal hysterectomy is performed, the surgeon is working at least partially by "feel" because his field of vision is limited; that possibly for this reason, one of the arteries was not properly tied off during the hysterectomy

but continued to bleed; that this condition, together with the hypofibrinogenemia previously mentioned, caused the death of Mrs. Sturm on the morning of July 27th.

Since the question raised in defendants' petitions for rehearing concerns only the sufficiency of the evidence to establish a prima facie case, and not the weight thereof, the above summary takes note only of the evidence favorable to plaintiff.

We are of the view that the evidence, if believed, was sufficient to establish a prima facie case of negligence and proximate cause.

We have again examined the entire record in this case to determine whether the trial court acted arbitrarily and abused its discretion in granting a new trial. Being cognizant of the fact that a trial court is in a better position than this court to appraise the fairness of a trial conducted by it, Houston v. Pettigrew, Okl., 353 P.2d 489, and being unable to affirmatively say the trial court abused "sound legal discretion", Cosmo Construction Co. v. Loden, Okl., 352 P.2d 910, we can not say the trial court erred in granting a new trial.

In Dr. John E. Horn's original brief it was argued in Proposition 3-B that there was no evidence connecting Mrs. Sturm's death with Dr. Horn's operative and post operative procedures. This conclusion was based upon the argument that a pathologist's autopsy report was improperly admitted, and that when the autopsy report is stricken from the record (as improperly admitted) there is no evidence that Dr. Horn was negligent. In petition for rehearing Dr. Horn points out that this same question will probably arise in re-trial of this action and that this court should express its views for the guidance of the trial court.

The record discloses that after Mrs. Sturm's death hospital authorities obtained permission for Dr. G., a pathologist, to conduct an autopsy examination to ascertain the cause of death. A report of the autopsy examination was filed with the hospital librarian and made a part of the hospital records. When plaintiff sought to introduce the autopsy report as a routine hospital record the defendants objected upon the ground that (1) the pathologist is in the courtroom and available to testify; (2) it is not the best evidence; and (3) the autopsy report is not a report in connection with the care and treatment of Mrs. Sturm, since the autopsy examination and report was conducted after her death.

We are of the view that there is merit in this contention. In Hembree v. Von Keller, 189 Okl. 439, 119 P.2d 74, we held generally that hospital records to be admissible in evidence must have been kept in the ordinary course of business as an essential part of the system of business. In the Hembree case we cited Sharp v. Pawhuska Ice Co., 90 Okl. 211, 217 P. 214, which involved "books of account", as authority for our holding that hospital records kept in the ordinary course of business were admissible.

As a general rule hospital records are prepared during such time as the patient is undergoing treatment. Such records are undoubtedly necessary for the benefit of the patient, the doctors, and the hospital staff. Such records would be harmful to the patient and of no benefit to the doctors and hospital staff unless dependable and accurate. Those who make and keep the records for doctors and hospitals which are to be used professionally in the further care and treatment of the patient must undoubtedly be guided by the highest and purest motives of the medical profession. For this reason hospital records may be accepted in evidence with a presumption of verity. However, after the death of a patient two motives could exist for conducting an autopsy: (1) To obtain information which will be useful in the treatment of future patients, and (2) to obtain information useful in prosecuting or defending a damage suit. In view of the fact that an autopsy could be prompted with litigation in mind we are of the view that it should not be placed in the category of a hospital record for evidentiary purposes.

We therefore hold that the trial court erred in accepting the autopsy report as a hospital report, but should have required plaintiff to call the doctor as his witness to identify the autopsy report, to testify in regard thereto, and to admit it after proper identification. 100 C.J.S. Workmen's Compensation § 537 h and i; Spiegel's House Furnishing Co. v. Industrial Comm., 288 Ill. 422, 123 N.E. 606, 6 A.L.R. 540 (Coroner's Inquest); New York Life Ins. Co. v. Gibbs, 176 Okl. 535, 56 P.2d 1179 (Coroner's Verdict); Oklahoma Aid Ass'n v. Thomas, 125 Okl. 190, 256 P. 719 (Death Certificate); Gray v. Cosden, 141 Okl. 183, 284 P. 288 (Best Evidence); Vol. 1, No. 1, Tulsa (Oklahoma) Law Journal page 62 (Evidence-Hospital Records). However, we do not consider this reversible error in the instant case for the reason that the doctor who conducted the autopsy was available for, and was, examined as a defense witness.