## BAUMLE v. VERDE.

No. 5034.    Opinion Filed July 20, 1915.

Rehearing Denied August 4, 1915.

(150 Pac. 876.)

1. **BREACH OF MARRIAGE PROMISE—Measure of Damages—Discretion.** In an action for damages for breach of a promise to marry, the measure of damages rests in the sound discretion of the jury. Section 2871, Rev. Laws 1910.

2.  **TRIAL—Impeachment of Verdict—Jurors.** Upon grounds of public policy, trial courts will not receive the affidavits, depositions, or oral testimony of jurors to impeach their verdict.

(Syllabus by Galbraith, C.)

*Error from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

Action by Emma Verde against Louis Baumle. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, *Baumle v. Verde,* 33 Okla. 243, 124 Pac. 1083.

*J. H. Woods* and *S. P. Freeling,* for plaintiff in error.

*Lockridge & Heckman,* for defendant in error.

Opinion by GALBRAITH, C. The defendant in error, a resident of Kalamazoo, Mich., commenced this action in the trial court against the plaintiff in error, a resident of Pottawatomie county, for damages on account of a breach of promise of marriage. The petition charged the time, place, and manner of entering into the contract by the parties, and its breach by the plaintiff in error, and the damages sustained by the defendant in error. The answer was a general denial. There was a trial to the court and a jury, and a verdict for the plaintiff in the sum of $6,583, upon which judgment was rendered, and from which the appeal has been prosecuted to this court.

Error is assigned to the overruling of the motion for new trial, and to the giving of instructions No. 3 and No. 5. Counsel have not furnished us with any authorities supporting their claim that the giving of the instructions complained of was error, so it will, perhaps, be sufficient to say that after careful examination of these instructions we are inclined to the opinion that they correctly state the rules of law arising upon the issues made by the pleadings and the evidence in this case.

Again, it is contended that counsel for the defendant in error, in his argument to the jury, stated that it was alleged in the petition that the defendant was worth $50,000, and there was no evidence in the record contradicting this allegation. This remark was excepted to by the counsel for the defendant, and is assigned as error. The connection in which this statement was used does not appear. It seems to be a statement of fact, and we do not consider that it was prejudicial to the plaintiff in error.

Again, assignment No. 4 is urged as prejudicial error. This reads as follows:

"Said court especially erred in refusing to grant a new trial to plaintiff in error on the ground that the jury arrived at their verdict by lot and chance, and by agreeing in advance that each juror should name the amount that he was in favor of returning as his verdict, and that they would then divide the total of said sum by the number of jurors and return the amount thus found as their verdict and because the said jury carried out the said agreement, as shown by the evidence introduced on the hearing of the motion for a new trial."

It appears from the record that in support of the motion for new trial, and to sustain this assignment, the plaintiff in error presented affidavits from a number of the jurors as to the method in which they arrived at the verdict, and a number of the members of the jury were called and examined before the court orally by counsel, and after considering the affidavits and the oral testimony of the jurors the court found that the verdict had not been arrived at by chance or by casting lot, and denied a new trial. This does not seem to be error. The method employed by counsel to impeach the verdict in this instance has been expressly disapproved by the re-

peated decisions of this court, beginning with *Colcord v. Conger*, 10 Okla. 458, 62 Pac. 276, and extending to *Glockner v. Jacobs*, 40 Okla. 641, 140 Pac. 142. In *Colcord v. Conger, supra*, the court quotes from Thompson on Trials, sec. 2618, as follows:

"Upon grounds of public policy, courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror, will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it, or that they misunderstood the charge of the court, or that they otherwise agreed on their verdict by average or lot."

And following this quotation the court says:

"And this statement is amply sustained by a multitude of authorities. In fact, the only courts, it seems, which have made exceptions to this rule are the courts of Kansas, Iowa, and Tennessee, and they limit the inquiry to matters which do not inhere in the verdict."

In *Tulsa Railway Co. v. Jacobson*, 40 Okla. 118, 136 Pac. 410, Mr. Justice Hayes, speaking for the court, said:

"The second assignment [of error] urged complains of the action of the trial court in refusing to admit as evidence in support of plaintiff in error's motion for a new trial the affidavit of certain of the jurors to show that in arriving at the amount of their verdict the jurors concurring therein agreed that each would set down upon a piece of paper the amount which he thought defendant in error was entitled to recover, and that said amounts should then be added together and divided by the number of jurors concurring, and that the amount thus ascertained should be the amount for which the verdict would be rendered and was rendered. That the trial court committed no error in refusing to admit these affidavits of the jurors for the purpose of impeaching their verdict is settled by *Colcord v. Conger*, 10 Okla. 459, 62

Pac. 276; *Barnes v. Territory*, 19 Okla. 373, 91 Pac. 848; *Pitchlynn v. Cherry*, 32 Okla. 77, 121 Pac. 196."

And the court, after quoting from *Colcord v. Conger, supra*, said:

"This doctrine is supported by the decided weight of authority (2 Thompson on Trials, 2618), and no good reason has been suggested to us why it should be overturned."

Upon the above authorities, it was error for the court to receive the affidavits and testimony of the jurors, but, having received the evidence and found it insufficient to impeach the verdict, no one was harmed thereby.

It is also complained that the verdict is excessive, and is apparently the result of prejudice and passion, and for that reason should be set aside. With this contention we cannot agree. The rule for the measure of damages for breach of contracts to marry is prescribed by statute (section 2871, Rev. Laws 1910), which reads:

"The damages for the breach of promise of a marriage rest in the sound discretion of the jury."

It appears from the evidence that Louis Baumle was a citizen of Pottawatomie county, of substantial means; that he was of German descent, and in 1907 was a widower and alone in the world, having lost his wife some ten years prior to that time, and his only son about six years before; that he had a friend by the name of Knapp, who was also of German descent, and who was, in May of that year, departing from Shawnee for a visit to Germany; that Knapp was also a widower, and the main object of his trip abroad being to select a wife, that Baumle promised Knapp a substantial consideration if he would find a suitable wife for him, saying that he would prefer a woman of mature years, with a son, if possible,

who might become his heir, and whom he might educate and start in business; that when Knapp reached Chicago he met Mrs. Verde, and after becoming acquainted with her he thought she was the person his friend, Baumle, was looking for for a life partner, and wrote him to that effect. Baumle wrote to Mrs. Verde, which letter was promptly answered, and a rather vigorous courtship then ensued for a number of months by correspondence, which resulted in Baumle visiting Chicago on September 29, 1907, for the purpose of seeing Mrs. Verde and her son, Albert. When he arrived in Chicago Mrs. Verde met him at the station by appointment, and then a vigorous personal courtship ensued between them from that date until the 8th of October, when it is alleged, and the evidence tends to prove the fact, that an engagement to marry was entered into, and on the 9th of October, Baumle left Chicago for Springfield, where he had relatives, and while at Springfield wrote at least three letters to Mrs. Verde, the character of which is fairly exhibited by the last one, which is as follows:

"SPRINGFIELD, OCT. 24.

"Dear Emma and Albert: With heavy heart I take my pencil to let you know how I am getting along since I left you. I fell sick, with the hope of getting better. I seem to get worse every day. I went at once to the doctor and the right eye is swollen shut. You would hardly know me. I have two doctors. They advise me to go to Hot Springs and take a cure. Dear Emma, I go for my health, and as soon as I am well again I will come to Chicago. In case I should not recover my health, I will make a will or testament, and will all to you and your son, that you and your son will never forget me. I have pain in my heart and my lungs hurting me so I will close for this time.

"Regards and kisses for you and your son.

"L. BAUMLE."

Baumle, after writing this letter, left Springfield for the West without returning to Chicago, and it seems his love grew cold for Mrs. Verde, and he ceased writing to her and refused to acknowledge receipt of her frequent letters written him, and later found another woman who suited him better and married her. This was not a case of "puppy love," since Louis was 56 and Emma 36 when the courtship commenced. It was a serious affair from the beginning. Mrs. Verde was greatly harrassed, annoyed, and embarrassed, and suffered great mental and bodily pain on account of the cruel treatment she had received at the hands of Mr. Baumle in breaking his engagement to marry her, and instituted this action to recover damages on account thereof.

Two juries of Pottawatomie county have passed upon this case. The first one awarded Mrs. Verde a verdict of $4,000. On appeal to this court that verdict was reversed in *Baumle v. Verde*, 33 Okla. 243, 124 Pac. 1083, 41 L. R. A. (N. S.) 840, Ann. Cas. 1914B, 317. The judgment appealed from in this case was a verdict rendered on new trial, granted in pursuance of the mandate of this court. We have searched the record in vain for a reason that would justify us in concluding that the jury abused the discretion vested in it by statute in fixing the amount of the damages. The trial court seems to have been fair and painstaking in its rulings, and to have fairly and fully stated in its instructions to the jury the rules of law arising upon the issues. Mr. Baumle was represented by astute and learned counsel. Altogether there seems to have been a fair trial, and no sufficient reason appears for disturbing the judgment.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.