## CARTER STATE BANK v. ROSS.

No. 5797.    Opinion Filed November 2, 1915.

Rehearing Denied November 30, 1915.

· (152 Pac. 1113.)

NEW TRIAL—Impeachment of Verdict—Affidavits of Jurors—Competency. The general rule is that affidavits of jurors are admissible to explain and uphold their verdict, but not to impeach and overthrow it. But this general rule is subject to this qualification: That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself, as that the jury considered and were influenced by specific evidence that had not been offered or admitted at the trial; but not to show any matter which does essentially inhere in the verdict, as that ·the juror did not assent to the verdict, that he misunderstood the instructions, or any other matter resting alone in the juror's breast.

(Syllabus by Galbraith, C.)

Error from County Court, Beckham County;
E. H. Gipson, Judge.

Action by the Carter State Bank against W. B. Ross. Judgment for defendant, and plaintiff brings error. Reversed.

M. A. Tracy and Hendrix & Tracy, for plaintiff in error.

T. Reginald Wise, for defendant in error.

Opinion by GALBRAITH, C. This action was prosecuted by the plaintiff in error to recover a balance claimed to be due on a promissory note. The defense was payment, and that more than the amount claimed had been paid, with prayer for judgment for the excess. The trial was to the court and a jury, and a verdict returned for the defendant for the sum of $19.15. To review the judg-

ment rendered upon the verdict the plaintiff in error has prosecuted an appeal to this court.

It is urged that the court erred in permitting the jury to take to the jury room, when they retired to consider their verdict, a certain bank book, a part of which had been introduced in evidence at the trial, and that the jury considered the entire book, and such parts thereof as they desired, without confining their consideration to the parts of the book introduced in evidence, and that the court erred in excluding the proof of this fact embraced in the affidavit of two of the jurors, offered in support of this assignment included in the motion for a new trial. It is argued by the defendant in error, in answer to this assignment, that the plaintiff in error cannot complain, since he introduced all of the book in evidence; but that is not true. The record shows that only certain entries in the book relating to the transaction between plaintiff and defendant were offered and received in evidence.

The motion for a new trial is addressed to the discretion of the trial court, and, under the general rule, that discretion will not be reviewed by the Supreme Court, unless there is shown a clear abuse thereof. However, in this instance, there was no exercise of this discretion by the trial court, since he refused absolutely to consider the affidavits of the jurors. Due exception was taken, and the question of admissibility of the affidavits preserved. The two affidavits are practically the same, and the principal allegations therein are as follows:

"That when we retired to consider our verdict. we took with us a certain book, which I believe was designated as the 'individual ledger'; that while we were considering the case we made an examination of said ledger, or rather one of our number, to wit, W. E. Simmons, made the ex-

amination of the book, and found, as he stated, where there were a part of the record, or rather a part of the leaves or pages, missing from the book, and that in the consideration of the case we took into consideration the fact that part of the leaves or pages had been removed from the book, as well as what was shown by the pages actually offered in evidence in open court; and the fact that a part of the leaves or pages had been removed from the ledger aroused in the minds of some of the jurors that one Sellman had had something to do with that ledger which was dishonest, and to a material extent influenced our verdict."

The rule is well established in this state that the depositions or affidavits of jurors are not admissible to impeach their verdict. *Pitchlynn v. Cherry,* 32 Okla. 77, 121 Pac. 196; *Baumle v. Verde,* 50 Okla. 609, 150 Pac. 876. However, it does not follow that the affidavits of jurors, or their depositions, are not admissible to establish facts connected with the deliberations of the jurors that tend to show improper influence or conduct that may have led to an unjust verdict; that is, to prove something that does not inhere in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one, may be shown by affidavits or the depositions of the juror.

This distinction is made by Chief Justice Fuller in announcing the opinion of the Supreme Court of the United States in the case of *Mattox v. United States,* 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917. Mattox had been convicted of murder, and in support of a motion for new trial the affidavit of two jurors was offered to establish the fact (1) that the bailiff in charge of the jurors during their deliberations had made remarks in the hearing of the jury prejudicial to Mattox; and, (2) that a newspaper

article commenting upon the case, and taking a view of it prejudicial to Mattox, had been read to the jury in the jury room before their verdict was returned. The trial court refused to consider these affidavits. The Supreme Court said this was reversible error, and, in so doing, said in part:

"There is, however, a recognized distinction between what may and what may not be established by the testimony of jurors to set aside a verdict. This distinction is thus put by Mr. Justice Brewer, speaking for the Supreme Court of Kansas, in *Perry v. Bailey*, 12 Kan. 539, 545: 'Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because, being personal, it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to produce bad faith on the part of a minority, to induce an apparent acquiescence, with the purpose of subsequent dissent, to induce tampering with individual jurors subsequent to the verdict. But, as to overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard. Under this view of the law the affidavits were properly received. They tended to prove something which did not essentially inhere in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one.' * * * We regard the rule thus laid down as conformable to right reason and sustained by the weight of authority. These affidavits were within the rule, and, being material, their exclusion constitutes reversible error. A brief examination will demonstrate their materiality."

Likewise in this case the facts set out in the affidavit of the jurors show that the jury were allowed to take to

the jury room a book, only part of which had been offered and received in evidence, and in the consideration of the verdict the jurors not only considered parts of the book that had been offered in evidence, but considered other parts of the book that had not been offered in evidence. They therefore considered evidence which had not been offered and admitted at the trial of the case. This was prejudicial error. It was improper for the trial court to permit this bank book to be taken to the jury room. *Dane v. Bennett,* 51 Okla. 684, 152 Pac. 347.

Therefore we recommend that the judgment appealed from be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.