## EGAN v. FIRST NAT. BANK OF TULSA.

No. 5836—Opinion Filed Nov. 13, 1917.

Rehearing Denied Jan. 8, 1918.

(169 Pac. 621.)

(Syllabus.)

1. **Appeal and Error—Question of Fact—Verdict.**

Where there is evidence reasonably tending to support the finding of the jury, such finding will not be disturbed by this court on appeal.

2. **New Trial—Impeachment of Verdict—Affidavits or Testimony of Jurors.**

Affidavits or testimony of jurors will not be received for the purpose of impeaching the verdict which they have solemnly made and publicly returned into court.

3. **Same.**

And the fact that the juror making the affidavit did not concur in the verdict returned does not change the rule, for the rule is based upon public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during deliberations of the jury or afterwards. It is to prevent overzealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration.

Sharp, C. J., and Rainey, J., dissenting. Thacker, J., dissenting in part.

Error from District Court, Tulsa County; L. M. Poe, Judge.

Action by James Egan against the First National Bank of Tulsa. Judgment for defendant, and plaintiff brings error. Affirmed.

John F. Kerrigan, for plaintiff in error.

George T. Brown and Rice & Lyons, for defendant in error.

BRETT, J. On October 17, 1908, James Egan drew two checks for the sum of $3,250 each upon the First National Bank of Tulsa, payable to Peter Deitchman and D. M. Martindale, respectively. A few days after the execution and delivery of these checks Egan contends that he notified the bank not to pay either of said checks, and that the bank stopped payment of the Deitchman check, but that on the 19th day of October, 1909, the bank paid the Martindale check without his knowledge or consent; and in November, 1910, he instituted this suit against the bank to recover the amount of money thus paid by it upon said check. The bank denied that the payment of this check was ordered stopped, and contends that James Egan, after the bank had paid this check, ratified the act of the bank in paying the same, in that he continued to transact business with the bank, deposit money, draw checks thereon, and that he did not institute this suit until more than 13 months after the check had been paid; while Egan contends that he did not know that this $3,250 check to Martindale had been paid until September, 1910.

The issues raised by the pleadings were presented to the jury under proper instructions of the court, and the jury decided adversely to Egan and in favor of the bank, and inasmuch as there is evidence here supporting both theories of the bank, that is, that the payment of the check was not ordered stopped, and that Egan had ratified the payment of the check by the bank, we do not feel at liberty to disturb this verdict on account of insufficient evidence.

The most serious question raised in this case, and the only one requiring special attention, is whether or not a juror may impeach the verdict of the jury. Here there was a majority verdict, and two of the jurors who did not concur in the verdict returned made affidavits to the effect that the foreman of the jury, before a decision was reached, made the statement that:

"James Egan, the plaintiff, could have been shut out from testifying in the case that he had been in prison and his statement was unworthy of belief."

The affidavits also state that certain other members of the jury made statements to the same effect. And plaintiff in error insists that these affidavits were admissible, to impeach the verdict, and that the court erred in not granting a new trial on account of the facts stated in said affidavits.

We are aware that this presents a much-vexed question. But we are of the opinion that the position maintained by the majority of the courts that a juror cannot impeach the verdict of the jury furnishes a surer foundation for justice and is supported by better reason than is found in those cases which attempt to make distinctions and furnish qualified conditions under which a juror may impeach the verdict of his jury

As was well said by the late Judge Furman in Keith v. State, 7 Okla. Cr. 156, 123 Pac. 172:

"If, after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, judgments based upon verdicts of juries would rest upon a very uncertain foundation. Litigants against whom verdicts have been rendered would be continually importuning jurors, and attempting to obtain from them affidavits upon which such verdicts could be assailed. This would result in perjury and bribery. There would be no end of litigation in cases tried before juries. Therefore, for the security of litigants, and to prevent fraud and perjury, as well as for the protection of the jurors themselves, courts will not allow jurors to impeach their own verdict, unless they are permitted to do so by the express provisions of the statute. We have no statute permitting this to be done."

In Saltzman v. Sunset Telephone & Telegraph Co., 125 Cal. 501, 58 Pac. 169, it is said:

"The independence of the jury and the value of their discussions would be lessened, if the reasons given by any juror for his opinions or for his verdict could be reported to the court and criticized, and his motives impugned for remarks made in the jury room. And such reports would be more likely to be made by dissenting jurors who had been heated by earnest debate and defeated by the final vote. But the independence of the jury would be gone if a perfectly correct report could be made and the verdict attacked by showing that some jurors mistook the evidence or the law, or were actuated by other considerations. There would be no freedom of discussion in the jury room if they were subject to a possible censorship of this character. And the stability of judicial determinations would

be as much imperiled by liability to attack by dissenting jurors as by the others. * * * The main reasons, I think, are these two: (1) That the jurors, who are practically the only witnesses in regard to the matter, may not be tampered with, and the verdicts by these means imperiled; and (2) to secure independence and freedom from improper restraint on the part of the jury."

In McDonald et al. v. Pless et al., 238 U. S. 264, 35 Sup. Ct. 783, 59 L. Ed. 1300, it is said:

"Let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication, and all verdicts could be and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness, and freedom of discussion, and conference.

"The rule on the subject has varied. Prior to 1785 a juror's testimony in such cases was sometimes received, though always with great caution. In that year Lord Mansfield, in Vaise v. Delaval, 1 T. R. 11, refused to receive the affidavit of jurors to prove that their verdict had been made by lot. That ruling soon came to be almost universally followed in England and in this country. Subsequently, by statute in some states, and by decisions in a few others, the juror's affidavit as to an overt act of misconduct, which was capable of being controverted by other jurors, was made admissible. And, of course, the argument in favor of receiving such evidence is not only very strong, but unanswerable, when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce Legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse,' and 'no verdict would be safe.' Cluggage v. Swan, 4 Bin. [Pa.] 155, 5 Am. Dec. 400; Straker v. Graham, 4 Mees. & W. 721, 7 Dowl. P.

C. 223, 1 Horn & H. 449, 8 L. J. Exch. N. S. 86"

Besides, this court has repeatedly followed the well-established rule that affidavits or testimony of jurors will not be received for the purpose of impeaching the verdict which they have solemnly made, and publicly returned into court. Colcord v. Conger, 10 Okla. 458, 62 Pac. 276; Barnes v. Territory, 19 Okla. 373, 91 Pac. 848; Pitchlynn v. Cherry, 32 Okla. 77, 121 Pac. 196; Tulsa St. Ry. Co. v. Jacobson, 40 Okla. 118, 136 Pac. 410; Glockner v. Jacobs, 40 Okla. 641, 140 Pac. 142; C., R. I. & P. Ry. Co. v. Palmer, 55 Okla. 227, 154 Pac. 1163.

In Glockner v. Jacobs, 40 Okla. 641, 140 Pac. 142, supra, Justice Riddle quotes with approval the syllabus in Tulsa St. Ry Co. v. Jacobson, supra, as follows:

"Upon grounds of public policy, jurors will not be heard by affidavit, deposition, or other sworn statement to impeach or explain their verdict to show on what ground it was rendered or that they made a mistake, misunderstood the law or the result of their finding, nor permitted to show what items entered into the verdict, nor how they arrived at the amount. Jurors will only be heard in support of their verdict or conduct when same is attempted to be impeached."

And this doctrine has uniformly been adhered to by this court, except in Carter State Bank v. Ross, 52 Okla. 642, 152 Pac. 1113, and, in so far as the holding in that case is in conflict with the views herein expressed, the same is overruled.

And the fact that the juror making the affidavit did not concur in the verdict returned does not change the rule. For the rule is based upon public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room either during the deliberations of the jury or afterwards. It is to prevent overzealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration.

The judgment is affirmed.

SHARP, C. J., and RAINEY, J., dissent. THACKER, J., dissents from the rule announced in the second paragraph of the syllabus, but concurs in the conclusion reached in the case. All the other Justices concur.