## DILLARD v. STAR DRILLING MACHINE CO.

No. 26865.  Oct. 20, 1936.

Rehearing Denied Jan. 26, 1937.

Application for Leave to File Second Petition for Rehearing Denied April 20, 1937.

A. E. Montgomery, for plaintiff in error.

Guy Savage, for defendant in error.

PER CURIAM. Plaintiff, the Star Drilling Machine Company, brought this action to recover a balance owing on notes executed by defendant, R. V. Dillard, and to foreclose a chattel mortgage covering a drilling machine, securing the payment of the debt. Defendant, by answer and cross-petition, claimed damages, in an amount in excess of the amount due on the notes, arising in his favor by reason of the breach of warranty of the fitness of the machine to reasonably perform the work for which it was sold, used and intended. Defendant, admitting the balance due on the notes, assumed the burden of proof on trial of the case, and, after testimony was introduced on the issue of breach of warranty, the court, without objection on the part of plaintiff, gave written instructions, the jury returning a verdict in favor of the defendant. Thereafter, the court, on motion of plaintiff for a new trial, vacated the verdict and judgment in favor of the defendant. Defendant appeals, urging for reversal that the court, in sustaining the motion for a new trial, erred in respect to a pure, simple, and unmixed question of law. The reason assigned by the court for granting the new trial is shown in the record as follows:

"On this 29th day of June, 1935, came on for hearing the motion of the plaintiff herein for a new trial, the plaintiff being present by his attorney, Guy Savage, and the defendant, by his attorney, A. E. Montgomery; and the court, having heard the arguments of counsel, and being fully advised, finds that said motion should be sustained by reason of error committed by the jury as follows: The jury in said case, after receiving instructions from the court, and after hearing argument of counsel, retired to their jury room and remained in session, considering said case for approximately one-half day, during which time they came into the courtroom twice before the final rendition of said verdict in said case; that when said jury returned to the court the last time, the court, in substance, explained the true effect of their verdict, as rendered, and asked them if it expressed their true intention, to which the five concurring jurors assented, whereupon the court received the verdict, had same read by directing the clerk to read it, and after same was read by the clerk and received, the court discharged the jury; and that a few minutes thereafter, not to exceed five minutes, three of the jurors returned to the courtroom, and there stated to the court that there was a misunderstanding concerning said verdict, that at least three of the jurors never returned to said courtroom, and knew nothing of what had happened until some time thereafter; that the court is of the opinion that by reason of the affidavit of Herman Dunagan, one of the jurors in said case, attached to plaintiff's motion for new trial, and that by reason of what the said jurors stated to the court, immediately after the verdict had been received and read by said clerk, that the verdict as rendered was a mistake and misunderstanding and the signing and returning of the verdict so signed and returned into court did not express the will and finding of said concurring jurors and was not their true verdict, and,

"It is therefore ordered and adjudged that the motion of plaintiff for a new trial be, and the same is hereby sustained, and the verdict of the jury herein is set aside by reason as above set forth, to which ruling of the court defendant then and there excepted, and gave notice in open court of his intention to appeal to the Supreme Court of the state of Oklahoma. * * *"

It is proper to consider the reasons as-

signed by the court, embodied in the above journal entry and order, in determining whether the new trial was properly granted, and the reasons so assigned are presumed to embrace all of the reasons for the action taken. Hull v. Polson, 130 Okla. 136, 265 P. 1068; Federal Surety Co. v. Little, 156 Okla. 75, 9 P. (2d) 447. It affirmatively appears that the court was moved to grant a new trial upon the affidavit of one juror and ex parte statements of other jurors to the effect "that the verdict as rendered was a mistake and misunderstanding and the signing and returning of the verdict so signed and returned into court did not express the will and finding of said concurring jurors and was not their true verdict." Since the action of the court was based upon the statements of jurors, designed to show that the verdict returned was not the verdict intended, it is pertinent to inquire as to the competency of the proof offered upon which the court sustained the motion for a new trial.

In the case of Pitchlynn v. Cherry, 32 Okla. 77, 121 P. 196, it was said:

"Three jurors made affidavit that they misunderstood the meaning and effect of the verdict that had been regularly returned and received. These affidavits were used in support of the motion for new trial. The jurors were not presented in court for examination. No opportunity to cross-examine them was given the opposite party, nor was the testimony of the balance of the jury taken. Held, not a sufficient showing to impeach the verdict."

While the above statement, from the syllabus of the case, might indicate that the court, where proper and satisfactory testimony of jurors was introduced, would be justified in sustaining a motion for new trial, if the verdict was not truly expressive of the decision and finding reached, an examination of the body of the case discloses that the court bottomed its decision upon the doctrine, firmly established by this court, that upon grounds of public policy jurors will not be heard by affidavit, deposition, or other sworn statement, to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it, or that they misunderstood the charge of the court, or that they otherwise mistook the law, or the result of their finding. Attention was called to the decision of the Territorial Court in Colcord v. Conger, 10 Okla. 458, 62 P. 276, where that tribunal committed itself to the rule of public policy denying the right of jurors to impeach or explain their verdicts. The evils against

which this rule is intended to guard are referred to by the court in the case of Keith v. State, 7 Okla. Cr. 156, 123 P. 172, where the following language, taken from an earlier case, appears:

"If after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, judgments based upon verdicts of juries would rest upon a very uncertain foundation. Litigants against whom verdicts had been rendered would be continually importuning jurors, and attempting to obtain from them affidavits upon which such verdicts could be assailed. This would result in perjury and bribery. There would be no end of litigation in cases tried before juries. Therefore, for the security of litigants, and to prevent fraud and perjury, as well as for the protection of the jurors themselves, courts will not allow jurors to impeach their own verdict, unless they are permitted to do so by the express provisions of the statute. We have no statute permitting this to be done."

In the body of the opinion, it is said:

"It is expressly stated in nearly all of the cases cited by counsel for appellant that the settled rule, founded upon considerations of necessary policy, when not controlled by statute, is that the testimony of a juryman cannot be received to impeach and defeat his verdict. It is true that hardships may arise under the rule forbidding the introduction of the testimony or affidavits of jurymen, for the purpose of impeaching their verdict; and, while it may be that justice may occasionally miscarry, unless such evidence be admitted, on the other hand, to receive such evidence opens wide the door to corrupt practices. The jury will be subjected to influences after they have been dismissed from duty as jurors, to induce them to repent of their verdict and endeavor to revoke it. They would be liable to be tampered with. It would be difficult to place a limit to the corruption such a practice might engender. In addition to all of this, there is another reason why jurors should not be allowed to impeach their verdicts by their voluntary affidavits or testimony. If this were permitted to be done, it would take from the court the power to grant a new trial and give it to the jury. Manifestly this would be inconsistent with the theory of our judicial system, revolutionary in character, and contrary to public policy. In the absence of a statute in this state, directing the introduction of affidavits and testimony of jurors to impeach their verdict, we do not feel authorized to follow those courts which permit this to be done, when not directed by statute; and we feel that the safer and better plan is to adhere to our former decisions on this subject."

The history of the doctrine applied in this jurisdiction shows its reaffirmation in the cases of St. L. & S. F. Ry. Co. v. Brown, 45 Okla. 142, 144 P. 1075; Tulsa St. Ry. Co. v. Jacobson, 40 Okla. 118, 136 P. 410; Glockner v. Jacobs, 40 Okla. 641, 140 P. 142; Baumle v. Verde, 50 Okla. 609, 150 P. 876.

This court, in the case of Egan v. First Nat. Bank of Tulsa, 67 Okla. 168, 169 P. 621, after calling attention to the many cases in which the rule, inhibiting the introduction of testimony of jurors to impeach their verdicts solemnly made and publicly returned into court, had been applied, said:

"And this doctrine has uniformly been adhered to by this court, except in Carter State Bank v. Ross, 52 Okla. 642, 152 P. 1113, and, in so far as the holding in that case is in conflict with the views herein expressed, the same is overruled."

Herein we have not failed to observe the contention advanced by plaintiff in support of the ruling of the trial court to the effect that affidavits and testimony of jurors will be received in proof of a mistake in the return and rendition of a verdict. The statements in the texts, 27 R. C. L. p. 900, section 74, 46 C. J. 162, and in the cases of Wolfgram v. Schoepke, 123 Wis. 19, 3 A. & E. Ann. Cas. 398, Hamburg-Bremen F. Ins. Co. v. Pelzer Mfg. Co. (C. C. A.) 76 Fed. 479, Paul v. Pye, 135 Minn. 13, 159 N. W. 1070, and Mattox v. United States, 146 U. S. 140, 36 L. Ed. 917, support plaintiff's position, but this court has declined to follow this line of cases as shown by the language employed in the case of Oklahoma, K. & M. Ry. Co. v. McGhee, 84 Okla. 116, 202 P. 277, in answer to a similar contention, where it is said:

"Counsel present this question again, they say in their brief, 'in hope that the court may again overrule itself 'and return to the doctrine as expressed by Justice Brewer in Mattox v. U. S., 146 U. S. 140, and Bank v. Ross, 52 Okla. 642, 152 P. 1113.'

"The court, we fear, is so irretrievably committed to the doctrine assailed that it cannot depart from it at this late date. There is a long and unbroken line of cases to the effect that, upon grounds of public policy, jurors will not be heard by affidavit, deposition, or other sworn statement to impeach or explain their verdict, or show on what grounds it was rendered, or that they made a mistake, or misunderstood the law or the result of their finding, or to show what items entered into the verdict, or how they arrived at the amount. Jurors will only be heard in support of their verdict or conduct when same is attempted to be impeached."

Later cases adhering to the rule are:

Teeters v. Frost, 145 Okla. 273, 292 P. 356, holding:

"In this state no rule of law or procedure is more definitely settled than that a juror will not be permitted to impeach his verdict by affidavits or by testimony, for misconduct occurring either inside or outside of the jury room."

And Skaggs v. Gypsy Oil Co, 169 Okla. 209, 36 P. (2d) 865, to the effect:

"This rule is based on public policy and is enforced for the purpose of preventing litigants and the public from invading the privacy of the jury room."

It is apparent that the trial court was led into error in granting the motion of plaintiff for a new trial. In reaching this conclusion we have not failed to keep in mind the discretion vested in trial courts in considering verdicts, when challenged on motion for new trial, nor the presumption indulged in favor of the action of a trial court in granting new trials (Metropolitan Life Ins. Co. v. Plunkett, 109 Okla. 148, 234 P. 722; De Meglio v. Studebaker Corporation of America, 73 Okla. 177, 175 P. 342); but we observe that the discretion referred to by the authorities must be a legal discretion (Vickers v. Philip Carey Co., 49 Okla. 231, 151 P. 1023; Belt v. Morris, 168 Okla. 528, 34 P. (2d) 581), and not a capricious one (Magnolia Petroleum Co. v. McDonald, 168 Okla. 255, 32 P. (2d) 909). Again, we remember that there must be sufficient legal grounds to sustain the action of the court in granting a new trial, otherwise, the conclusion is not justified. Poynton v. Beacon Falls Rubber Co., 115 Okla. 245, 242 P. 563.

The action of the trial court in granting a new trial having resulted from an error regarding a pure, simple, and unmixed question of law, and there being no other ground or reason influencing or causing the court to take such action, it necessarily follows that the order sustaining the motion of plaintiff for a new trial should be set aside. Thompson v. Nickle, 105 Okla. 181, 229 P. 202; second appeal, 113 Okla. 44, 239 P. 649.

The judgment of the trial court in sustaining the motion for a new trial is, therefore, reversed, with instructions to reinstate the verdict and judgment in favor of the defendant.

The Supreme Court acknowledges the aid of Attorneys Forrester Brewster, Irvin Donovan, and R. M. Mountcastle in the preparation of this opinion. These attor-

neys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Brewster and approved by Mr. Donovan and Mr. Mountcastle, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted, as modified.

McNEILL, C. J., OSBORN, V. C. J, and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.